[Civ. No. 5139.  First Appellate District, Division Two.—September 2, 1925.]

## HERBERT A. BRUNTSCH, Respondent, v. DUDLEY D. SALES, Appellant.

## ERNEST A. BRUNTSCH, Respondent, v. DUDLEY D. SALES, Appellant.

[1] SECRET PROFITS—ATTORNEY AT LAW—AGENCY—EVIDENCE.—In this action against an attorney at law for profits alleged to have been secretly made by him in a real estate leasing transaction in which it was claimed that he acted as agent and attorney for plaintiffs, who, with others, including defendant's wife, owned the property, the trial court was justified in holding that primarily defendant was acting *sui juris* and associated himself with the agent of the lessee to obtain the lease; and he was not set in motion by his wife, acting as a cotenant, but he afterward acted for her as her attorney in the same degree in which he acted as attorney for plaintiffs.

[2] ID.—PARTIES—AGENCY—COTENANTS.—In such action, there was no merit in the contention that if anyone was entitled to recover, certain other cotenants were likewise entitled to recover, where there was no evidence at all that defendant did in any respect act as attorney or agent for said other cotenants.

[3] ID.—ATTORNEY AND CLIENT—EVIDENCE—FINDINGS.—In such action, the assertion on appeal that there was absolutely no evidence in the record that defendant was the attorney for any of the cotenants, other than his wife, and that the finding of the trial court to that effect was without any evidence to support it, was in direct conflict with the evidence contained in the record.

[4] ID.—PRINCIPAL AND AGENT—EVIDENCE—PARTIES.—In such action, neither the cotenants whom defendant did not represent as attorney or agent, nor the agent of the lessee, who was a coprincipal with defendant in the procuring of the lease and the division of the bonus or commission, were proper or neces·ary parties.

(1) 6 C. J., p. 710, n. 30 New.   (2) 2 C. J., p. 954, n. 83; 6 C. J., p. 710, n. 30 New.   (3) 6 C. J., p. 637, n. 39.   (4) 2 C. J., p. 903, n. 65 New.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.  Walter Perry Johnson, Judge.  Affirmed.

The facts are stated in the opinion of the court.

Edward A. Cunha, R. P. Henshall and R. R. Moody for Appellant.

Frank L. Guerena for Respondents.

STURTEVANT, J.—The appellant, Dudley D. Sales, a practicing attorney at law in the city and county of San Francisco, was sued by the respondents Herbert D. and Ernest A. Bruntsch, brothers-in-law of the appellant, for profits alleged to have been secretly made by the appellant in a real estate transaction in which it is claimed that appellant acted as agent and attorney for the respondents. Separate suits were filed by respondents, later they were consolidated and a trial was had by the court sitting without a jury, judgment was rendered against appellant in each action and appeals were taken from those judgments.

In the gore block in San Francisco located between Market Street and Eddy Street is a piece of property extending from Market Street to Eddy Street, rectangular in form, which may be said to be owned as follows: The lot fronting on Market Street is owned one-half by the Cooks and the other half by the Bruntsches, and the lot fronting on Eddy Street is owned by the Luchsingers. The findings are as follows:

## "I.

"That defendant is a resident of the City and County of San Francisco, State of California, and has been at all times herein mentioned and now is, a duly licensed and practicing attorney at law in and before the courts of said state;

## "II.

"That for several years last past the plaintiff, Margaretha Bruntsch and Tosca Bruntsch Sales, sisters of plaintiff, and Carl C. G. Bruntsch, Ernest A. Bruntsch and Harold C. Bruntsch, brothers of plaintiff, have been and now are, the owners of a one-sixth interest each in the entire one-half interest in the following described land, with the improvements thereon, situated in the City and County of San Francisco, and more particularly described as follows: (Describing the Cook-Bruntsch lot.)

"III.

"That by instrument dated September 1, 1920, the said land and the buildings thereon were leased by the persons named in paragraph II hereof, and by the owners of the other one-half interest in said property, to Universal Film Manufacturing Company, a New York corporation, hereinafter referred to as the 'Company';

"IV.

"That negotiations for the leasing of said property were carried on for about nine (9) months immediately preceding September 1, 1920; that said negotiations on the part or for the behoof and benefit of said Company were negotiated and carried on by John H. Merrill; that in said negotiations the interest in said property of plaintiff and of plaintiff's said brothers and sisters was represented by defendant, and defendant acted for plaintiff and plaintiff's said brothers and sisters in the negotiations for leasing said property, and in determining and fixing the terms, provisions and conditions of the lease thereof; and that in so doing, defendant negotiated with and through said Merrill, and co-operated with said Merrill in bringing about a meeting of the minds of said Company on the one part, and plaintiff and his said brothers and sisters on the other part, and in consummating said transactions between said parties; and that in all the said matters, and in the matter of the preparation and execution of the lease, defendant, for a compensation charged to plaintiff by defendant and paid to defendant by plaintiff and other parties in interest, acted as the agent and attorney at law for plaintiff and plaintiff's said brothers and sisters.

"V.

"That upon the consummation of said lease, and on the 20th day of October, 1920, said John H. Merrill received from said Company the sum of $20,000.00 as a bonus or commission paid him by said Company for his services in procuring and effecting the lease of the premises and property of which said Company became the lessee at or about the time last aforesaid, including the property of plaintiff and plaintiff's said brothers and sisters; and that of said amount so paid to him, said Merrill, without the knowledge of plaintiff, paid to defendant on the 20th day of October, 1920,

the sum of $9750.00 as a commission or bonus to defendant for said co-operation of defendant with said Merrill and the part which defendant had taken in the negotiation and consummation of said lease of the interest of plaintiff and plaintiff's said brothers and sisters in said property hereinbefore described; and that said sum of $9750.00 was and is a profit derived by defendant as agent and attorney in said transaction for plaintiff and plaintiff's said brothers and sisters.

### "VI.

"That plaintiff did not know or discover until the early part of the year 1922 that defendant had received said sum of $9750.00 or any bonus or commission, or any compensation at all for or by reason of said transaction in respect of said property other than the compensation charged by defendant to plaintiff and plaintiff's said brothers and sisters; and that when plaintiff did learn of the payment made by said Merrill to defendant as aforesaid, plaintiff demanded of defendant one-sixth of the amount so received by defendant, but defendant has not paid, and has refused at all times to pay plaintiff, or account to plaintiff for a one-sixth part or any part of said amount so received by defendant, and has at all times denied the right of plaintiff to any share or part thereof, and that nothing has been paid by defendant to plaintiff in the premises, and that said claim and demand of plaintiff is wholly unpaid.

"And from the above findings the court concluded:

### "I.

"That Herbert A. Bruntsch, plaintiff above named, is entitled to recover from Dudley D. Sales, defendant above named, the sum of $1,625.00 with interest thereon at the rate of seven (7) per cent per annum from October 20, 1920.

### "II.

"That Herbert A. Bruntsch, plaintiff above named, is entitled to judgment against Dudley D. Sales, defendant above named, for $1,625.00 with interest thereon at the rate of seven (7) per cent per annum from October 20, 1920, to date of judgment."

[1] The appellant contends that the defendant's client was his wife, Mrs. Sales, and his obligation as an attorney

was to discuss the questions of duty and responsibility with Mrs. Sales and he also contends that Mrs. Sales as a cotenant was not bound to disclose that she was leasing her interest at a greater price than her other cotenants were getting and that her attorney was under no greater obligation.

For some years prior to 1920 the defendant was the gratuitous agent of the respondents and their brothers and sisters to collect the rental and to pay the taxes and insurance and thereafter to pay the balance to each of the co-owners. That agreement was oral except as to the respondent Herbert A. Bruntsch and he had reduced his authorization to writing. When the transaction in dispute arose the appellant stated to Ernest Bruntsch that there was a new lease coming up when the present lease expired. A short time after that he telephoned to Ernest's wife regarding the terms of the new lease. Later the appellant wrote out the formal lease, presented it to Ernest for his signature and thereafter charged him $125 as a fee. The appellant sent a statement of the same charge to each of the Bruntsch heirs. Herbert A, Bruntsch and the appellant held a few conversations regarding the making of the lease, the terms thereof and the persons to whom the first moneys should be paid and the amount to be paid to Herbert A. Bruntsch. When the lease had been prepared the appellant presented it to Mr. Bruntsch and it was thereupon signed. Later a written statement of charges, including appellant's fee for services, was sent by the appellant to Mr. Bruntsch. Both parties concede that the appellant acted as attorney and business agent for his wife, Tosca Bruntsch Sales. Mr. Gootch, an attorney at law, was the resident attorney for Margaretha Bruntsch and from time to time conferred with the appellant as her representative and later approved the appellant's bill for expenses incurred and his fee for services rendered. As the transaction proceeded the appellant conferred orally or otherwise with each of the Bruntsch heirs. Mr. Jesse Steinhart acted as attorney at law for the Universal Company. Mr. E. S. Merriman, a real estate broker, acted as the representative of the Cooks. Mr. Morris, a real estate broker, acted as the representative of Mr. Luchsinger. In this connection it should be noted that Mr. Luchsinger is not a party to the lease and so far as the record shows a separate

instrument was probably executed between the Universal
Company and him.

After the lease had been executed a controversy arose be-
tween Mr. Morris and Mr. Merrill regarding commissions.
On the trial of that action Mr. Sales and Mr. Merrill were
both called as witnesses. When they gave their testimony the
instant action had not even been contemplated. During the
trial of the instant action parts of the testimony of Mr. Mer-
rill, given in the trial of the Morris case, were read into this
record. The same with the testimony of the appellant, Mr.
Sales. We shall not attempt to segregate statements made by
those witnesses on the same subject, whether made in the one
trial or the other. As to what the transaction was as between
Mr. Sales and Mr. Merrill, in what capacity each one acted,
and as to the agreements made by them, those two men gave
testimony. Speaking of Mr. Sales, Mr. Merrill testified:
''I met him at his office. I told him I had an opportunity
to sell this lease to the Universal Picture Corporation and I
went to Mr. Sales and asked him if he would protect me in
delivering that lease if I would divide with him. I told him
I would give him $10,000 of the bonus on the deal and he
said that he represented the Bruntsches and could protect
me. Then I talked the proposition up and went about it to
deliver the lease and Mr. Sales and I acted together at that
end. . . . I asked Mr. Sales for an option on the property
which he gave me and I agreed with Mr. Sales that I would
pay him half of my bonus for his protection for me to
deliver the property. He said he represented the heirs and
could deliver it. . . . I told my wife to do anything that
Dudley Sales said and she turned over to him $10,500. . . .
I requested him to take care of this end of the deal. Mr.
Steinhart was the attorney of the Universal people and there
were a lot of angles that had to be straightened out and I
had Mr. Sales attend to them. Personally I was in New
York and Mr. Sales handled this end of it.'' The witness
referred to an option, saying that it had been returned to
Mr. Sales. ''Q. I will now ask you whose signatures ap-
peared on that instrument? A. The signatures of the heirs,
the Bruntsch heirs. I did not see them sign it. I saw Mr.
Sales' signature as attorney for them. . . . The $9,750 which
was paid by my wife, pursuant to my instruction, to Mr.
Sales, was given to him to be, as I understood it, Mr. Sales'

own money for himself. He is not to pay my wife or me any part of it. I have no agreement that he is to repay my wife or me any part of it. That money has absolutely been paid over so far as I am concerned, I am satisfied that Mr. Sales can keep it, and he earned it in consideration for services and rendering protection accorded me in connection with this deal. . . . When it was turned over to Mr. Dudley Sales it was his money. It was considered his money and I still consider it at the present time Mr. Dudley Sales' money. He has not promised to return any part of it to me or to my wife.''

Mr. Sales testified that Mrs. Sales and Mr. Merrill never came together regarding the matter. Mr. Sales also testified: ''On two separate occasions I gave Mr. Merrill an option. . . . The offer I believe involved a thirty-year lease. I have forgotten just exactly the rental, just exactly what the rental was, but I believe that $2,200 per month, with $50,000 cash deposit as security for the payment of the rental. That proposition was acceptable to all parties and an option was given. . . . That option expired before the lease was executed. . . . I was Mr. Merrill's attorney in fact to extend his agreement with the Universal people beyond the time limit and in that respect only and I have already stated that I represented Mrs. Sales as her agent in the transaction . . . and Mr. Merrill being in the east asked me to represent him in making the various contracts and in trying to get the different contracts together. . . . I agreed with Mr. Merrill that in consideration of one-half of the commission that he might get, out of that one-half I would get one-half of that for my work in representing the interest that I did and for not permitting anyone else to get this save him as my client and that out of my half I would pay Mr. Merriman $250. . . . In the settlement of our account in connection with this, that is in dividing the money in the way in which it was divided, nothing was said on the subject and there was no understanding—I considered it mine. . . . Later I think as I said at the time it was a mere plain agreement to divide the commission or bonus, I have forgotten just what the telegram mentioned, bonus, but anyway on it was a plain simple agreement to give me one-half of all he got.'' Mrs. Sales testified, ''He (my husband) came home one night

and told me that a Mr. John Merrill was going to put it (lease) through and whether I would consent to give Mr. Merrill an option on my one-twelfth interest, promising in signing this option on the lease that was pending not to act through anybody else but Mr. Merrill and that if I did that Mr. Merrill would give me one-half of his bonus, whatever it might be.''

Of course, there is other evidence in the record, but if the trial court believed the facts above recited, and from its judgment we must assume that it did, then, and in that event, the trial court was justified in holding that primarily the appellant was acting *sui juris* and associated himself with Mr. Merrill to obtain the lease.   He was not set in motion by Mrs. Sales acting as a cotenant, but he afterward acted for her as her attorney in the same degree in which he acted as attorney for each of the Bruntsch heirs.

[2]   The appellant claims that if anyone is entitled to recover that the Cooks and Mr. Luchsinger are likewise entitled to recover.   The contention is without merit.   There was no evidence at all that the appellant did in any respect act as attorney or agent for the Cooks or for Mr. Luchsinger.

In his fifth point the appellant claims that Mrs. Sales was principal, but, as we have pointed out above, Mr. Merrill and Mr. Sales were primarily the principals.   As the transaction unfolded Mr. Sales becomes attorney for Mrs. Sales and her brothers and sister.   In that aspect of the case it may be conceded that Mrs. Sales was a principal, but she was a principal only in the sense in which all of the Bruntsch heirs were principals.

[3]   In the next place the appellant asserts that there is absolutely no evidence in the record that Sales was the attorney for any of the Bruntsches other than his wife and the finding of the court below to that effect is without any evidence to support it.   Looking at the excerpts of testimony which we have quoted it is patent that this assertion by the appellant is in direct conflict with the evidence contained in the record.

[4]   Finally, it is asserted by the appellant that there is a fatal defect of parties defendant in this case because the Cooks, Mr. Luchsinger and Mr. Merrill were not made par-

ties. From what has been said above we think that no one of them was either a proper or necessary party.

The judgment is affirmed.

Langdon, P. J., and Nourse, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on October 1, 1925, and a petition by appellant to have the cause heard in the supreme court after judgment in the district court of appeal, was denied by the supreme court on October 29, 1925.